## 36185. LACKEY et al. v. THE STATE.

HILL, Justice.

Priscilla and Arthur Lackey, defendants in this case, appeal their convictions and life sentences for the murder of their infant daughter, Takeeta. We affirm.

Takeeta Lackey was born to the defendants on December 29, 1977. At birth, she was 6 or 7 weeks premature, had jaundice and Hyaline Membrane Disease and required a blood transfusion. She weighed 4 pounds 9 ounces at the time she was discharged from the hospital at 20 days old.

On the morning of September 22, 1978, defendant Priscilla Lackey returned to her home in Madison County from working as a night shift waitress in an Athens restaurant and noticed that the baby "didn't look like she usually looks." The defendants dressed and took the child to DeKalb General Hospital (instead of going to either of two nearer hospitals where they had outstanding bills) for the baby's first medical examination since being discharged from the hospital after her birth. The child was dead on arrival at DeKalb General and police investigators were immediately notified. Subsequently, the defendants were arrested and thereafter indicted for murder.

At trial, expert witnesses for the state testified that the child had died from a general deterioration of the body caused by malnutrition and dehydration while suffering an almost classic case of Childhood Maltreatment Syndrome. At the time of her death, the nine months old child weighed 5 1/2 pounds, had 2 rib fractures, parts of her lungs had begun to collapse, and she was so severely malnourished and dehydrated that her liver had been damaged, her skin had dried and wrinkled from a loss of underlying fatty tissue and her abdomen had swollen and was distended. Further, she had wounds of unknown origin in various stages of healing on her head, face, neck, back, chest, genital area, legs and arms.

At trial the defendants sought to explain the child's marks and poor medical condition by contending that she was an active, though sickly, child. They contended that many of the marks resulted from diaper rash or the child scratching herself and that those on the child's wrists resulted from their attempts to put socks on the child's hands to prevent scratching. Facial wounds were said to result from their attempts to use rubber bands to keep the baby's pacifier in her mouth. The rib fractures were said to have resulted from the child's fall from the bed. They contended that the child had been breast and bottle fed but had thrown up 60 to 95 percent of the time she ate. Defense attorneys extensively questioned expert witnesses for the

state concerning the possibility that the child had suffered a disease which prevented retention or use of the water and nutrients consumed (including chalasia, electrolytic imbalance, hypernatremic, malabsorption syndrome, sepsis, stenosis of the gastrointestinal tract, methamolonic asylgeria, and lack of thymus gland). The state's expert witnesses testified that the child could not have caused those injuries to herself, and stated that no disease "would account for the distribution of injuries in this child and the overall condition of this child."

1. The defendants were convicted of murder and sentenced to life imprisonment. A review of the evidence adduced at the trial of this case in the light most favorable to the jury's verdict shows that a rational trier of fact could have found defendants guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court did not err in refusing to direct a verdict of acquittal on the issue of murder at the close of the state's evidence. The testimony of the state's expert, a forensic pathologist, that in his opinion in most cases a parent who abuses a child does not intend to cause death did not preclude submission of this case to the jury.

2. The defendants contend that the trial court erred in failing to quash and dismiss their arrest warrants and the indictments issued thereon because the issuing magistrate had a pecuniary interest in their issuance in violation of the Constitution.

In Connally v. Georgia, 429 U. S. 245 (97 SC 546, 50 LE2d 444) (1977), decided January 10, 1977, the Supreme Court held that Georgia's statute under which a justice of the peace was paid a fee for issuance of a search warrant, but received no fee if the application for warrant was denied, was unconstitutional in that the issuing officer was not a neutral and detached magistrate but had a direct, personal, substantial pecuniary interest in the issuance of the warrant.

The General Assembly immediately passed Ga. L. 1977, p. 196, amending Code § 24-1601 so as to entitle a justice of the peace to receive a fee for each application for a search warrant (as well as each application for an arrest warrant) regardless of whether the application was granted or denied. This amendment became effective February 25, 1977. The amendment is not subject to the attack made in Connally v. Georgia, supra. *Allen v. State,* 240 Ga. 567 (242 SE2d 61) (1978); *Roberts v. State,* 243 Ga. 604, 607 (255 SE2d 689) (1979).

However, the records of the justice of the peace who issued the arrest warrants in this case showed that from February 25, 1977 (the effective date of the 1977 amendment) through the end of 1978 (these arrest warrants were issued December 14, 1978), the justice of the

peace had received 494 applications for arrest warrants and had issued 494 arrest warrants. Defendants contend that these figures show that the J. P. is not neutral and detached but is "an issuing magistrate," that by invariably granting all arrest warrant applications his "business" prospers, and that were his reputation otherwise his "business" would decline.

In this case we need not decide the issue sought to be raised nor need we decide whether proof of defendants' claim would necessitate evidence as to the ultimate disposition of the 494 warrants issued. Even assuming for purpose of decision (but without deciding that issue) that the arrest warrants were invalid, a new trial is not required.

The fourth amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Code Ann. § 1-804. "The simple language of the amendment applies equally to seizures of persons and to seizures of property." Payton v. New York, —— U. S. —— (100 SC 1371, 63 LE2d 639, 650) (1980).

Under Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) (1961), the sanction for an unconstitutional search is exclusion of the evidence obtained as a result of that search. Similarly, the sanction for an unconstitutional arrest is exclusion of the evidence obtained as a result of that arrest (e.g., fingerprints, Davis v. Mississippi, 394 U. S. 721 (89 SC 1394, 22 LE2d 676) (1969); mug shot, see United States v. Crews, —— U. S.—— (100 SC —, 63 LE2d 537) (1980); stolen property, Whiteley v. Warden, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1970); heroin, Sibron v. New York, 392 U. S. 40 (88 SC 1889, 20 LE2d 917) (1967); incriminating statements and sketches, Dunaway v. New York, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979)).

However, the sanction for an unconstitutional arrest is not suppression of the prosecution. Stallings v. Splain, 253 U. S. 339, 343 (40 SC 537, 64 LE 940) (1919); *Gibbs v. State,* 132 Ga. App. 886 (2) (209 SE2d 691) (1974); 5 AmJur2d Arrest, § 116. In the recent decision in United States v. Crews, supra, the defendant's arrest was found to be without probable cause but the Supreme Court reiterated its position (63 LE2d 537, 547): "Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. . . Respondent is not himself a suppressible 'fruit,' and the

illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." See also Frisbie v. Collins, 342 U. S. 519, 522 (72 SC 509, 96 LE 541) (1952).[1]

Here the defendants have made no motion to suppress evidence, either testimonial or physical, which they contend resulted from their arrest pursuant to warrants they contend are unconstitutional.[2] Hence it would serve no useful purpose to decide whether or not those arrest warrants are valid. The jury's verdict of guilty confirms the probable cause finding of the grand jury.

3. The defendants contend the trial court erred in failing to grant their motion for severance. The motion to sever was withdrawn on April 19, 1979, following a bench conference. Defense counsel then put on the record that the prosecutor had agreed to waive the death penalty. Apparently the motion to sever was withdrawn because of the prosecutor's waiver, but it was withdrawn in any event. See Code § 27-2101. Moreover, the defendants' defenses in the instant case were not antagonistic. *Liggins v. State,* 239 Ga. 452 (238 SE2d 34) (1977).

4. The defendants contend the trial court erred in denying their request for a change of venue based on alleged prejudicial pre-trial publicity. No showing was made that the veniremen and women had formed fixed opinions as to the guilt or innocence of the defendants from exposure to the pre-trial publicity. *Potts v. State,* 241 Ga. 67 (8) (243 SE2d 510) (1978); *Mooney v. State,* 243 Ga. 373, 385-388 (254 SE2d 337) (1979). The trial court did not abuse its discretion in overruling the motion for change of venue.

5. The defendants contend the trial court erred in allowing Madison County Sheriff Jimmy Mattox to remain in the courtroom during voir dire and the trial after he had been named and sworn as a prosecution witness. We find no merit in this enumeration of error. Sheriff Mattox did not testify in the case. The purpose of the rule of sequestration, Code § 38-1703, is to prevent a witness who has not testified, or who has not completed his or her testimony, from overhearing and having his or her testimony affected by the testimony of another witness. By sequestration, the testimony of

---

[1]The difference in treatment between an unconstitutional search (suppression of the items seized) and an unconstitutional arrest (no foreclosure of prosecution) has been explained as being in the "public interest in having the guilty brought to book." United States v. Blue, 384 U. S. 251, 255 (86 SC 1416, 16 LE2d 510) (1966).

[2]The reason no motion to suppress was made apparently is because no confession, if any, fingerprints, etc., obtained as a result of the arrests were used at trial.

the witnesses retains any inconsistencies which may exist, the recollections of the witnesses are not unduly refreshed by other witnesses, and the witnesses cannot shape their testimony to support or dispute the testimony of other witnesses. VI Wigmore on Evidence (3d Ed.) § 1838. Although the rule extends to communications, direct and indirect, between witnesses outside the courtroom, the rule is not otherwise applicable to spectators and it is not designed to exclude nonwitnesses from the courtroom.

The defendants nevertheless argue that the presence of the sheriff at the prosecutor's table influenced the jurors to convict, thereby denying the defendants the presumption that they were innocent and a fair trial by an impartial jury. This is not a sequestration question; it is a question of due process and the right of trial by jury. The same argument could be made as to the presence of the district attorney in the courtroom in a case being tried by an assistant district attorney. The problem of jurors being influenced by a spectator is probably as overrated as it is insoluble in light of the right of public trial. Here the defendants' assumption of influence is based purely on surmise as they have offered no evidence to show that any juror was subject to being influenced by the presence of the sheriff. In fact, because the sheriff had been named as a witness for the state (but was not called), the veniremen and women were examined as to him. Except for knowing him in his official capacity, only one venireman knew the sheriff personally and he was questioned and demonstrated his impartiality.

6. Defendant Priscilla Lackey moved for the appointment of a pathologist to assist her in her defense. Defendant Arthur Lackey moved for the appointment of a pediatrician and a forensic pathologist. The trial court granted the motions as to the appointment of a forensic pathologist. The defendants chose, in view of being limited to one expert, to have a pediatrician advise them as to childhood diseases. The trial court assented and a pediatrician was employed. The defendants contend the trial court erred in refusing to grant the motion for appointment of a forensic pathologist.

In support of their motions, defense counsel stated that they lacked the medical expertise necessary to adequately defend the defendants. It is clear from the defense's cross examination of the state's medical witnesses that defense counsel had been fully assisted by a person trained in medicine, undoubtedly the appointed pediatrician. Even assisted by the pediatrician, the defendants have made no showing of what they or the pediatrician did not know which a forensic pathologist would know, and have made no showing of how they were harmed by failure of the court to appoint a second expert. No abuse of discretion, and hence no error, has been shown.

7. The defendants contend they were improperly tried under an imperfect indictment because it accused defendants of murder by "neglect" as well as starvation and physical abuse. The indictment stated ". . . for that the said accused on the 22nd day of September, 1978 in the county aforesaid, did then and there, unlawfully and with force and arms, and with malice aforethought kill one Takeeta Lackey, their 10-month old daughter, by means of starvation, neglect and physical abuse." Defendants contend that the indictment was imperfect because "neglect" is inconsistent with malice aforethought and cannot constitute murder. Defendants equate "neglect" with "negligence." However, neglect as used in the indictment is not the equivalent of negligence; neglect of an infant can be intentional and deliberate and can, in conjunction with starvation and physical abuse, be done with malice aforethought intended to cause death. The indictment was written so as to charge the offense of murder, Code § 26-1101 (see Code § 27-701), and the effect of the court's charge made clear to the jury that they were to find the defendants guilty of murder only if they found starvation, neglect or physical abuse with malice aforethought beyond a reasonable doubt. It was not error to overrule the demurrer to the indictment.

8. The defendants contend the trial court erred in admitting evidence of defendant Arthur Lackey's experience in caring for elderly patients and of the college courses defendant Priscilla Lackey had taken in subjects related to the care and education of children. Defendants argue that by the introduction of such evidence, the state attempted to place on defendants a higher standard of care than permitted by law.

The question in this case, as submitted by the judge in his charge to the jury, was whether the defendants starved, neglected and abused their child with malice aforethought, not whether they were negligent. As noted by an emergency room physician called by the state, some parents may not properly care for their children and still not be guilty of abuse because they are doing the best they know how to care for their children.

Malice is a state of mind and frequently must be proven indirectly. *Davis v. State,* 237 Ga. 279 (2) (227 SE2d 249) (1976). Whether a child has been starved, neglected and abused with malice as to constitute murder, or has merely been harmed as a result of inability, carelessness or accident, may often require considerable indirect proof to determine the parent's state of mind. The education, intelligence and work experience of parents in such cases are relevant to the question of the parents' state of mind and should generally be admitted into evidence.

9. The defendants contend that the trial court erred in

admitting 12 enlarged, color photographs of the child immediately after her death, 3 color photos of a fractured rib removed surgically from her body during autopsy, and one of the clothing she was wearing at the time she was brought into the hospital. Defendants contend that the photographs were admitted solely to inflame the jury since there was no dispute that the cause of death was malnutrition and dehydration and that she had been bruised and scarred at the time of death. Defendants, however, did not admit that the cause of death was starvation, neglect and physical abuse. Instead, defendants contended they were not responsible for the injuries and poor physical condition of the child. The 12 photos of the body and the one of the clothing was therefore relevant to the issues in the case to show the unlikelihood that these injuries would have been self-inflicted or accidental. *Tucker v. State,* 245 Ga. 68 (1) (263 SE2d 439) (1980); *Beasley v. State,* 239 Ga. 49 (235 SE2d 520) (1977); *Edwards v. State,* 233 Ga. 625, 627 (212 SE2d 802) (1975). In this case, the autopsy photographs of the fractured rib after removal were relevant for the same reasons.

10. Defendant Arthur Lackey contends the trial court erred in denying him the right to open and close the closing arguments when he did not present evidence. Code § 27-2201. Defendant Priscilla Lackey testified in her own defense and called witnesses in her behalf who were examined by counsel for Arthur Lackey. In criminal cases tried jointly in which the defenses are not antagonistic it would be a simple matter for one defendant to "call" all the defense witnesses.

In criminal cases a defendant who examines the witness called by the other defendant, as was done in this case, loses the right to open and close the closing arguments. As noted in *Cruce v. State,* 59 Ga. 83 (3) (1877), "Where two are tried jointly, and a witness introduced by one is also examined by the other, both should be considered as having introduced evidence, and the state will be entitled to conclude."

Defendant Arthur Lackey presented evidence and it was not error to allow the state to open and close the argument.

11. The defendants contend the trial court erred in charging the jury as follows: "I charge you that a presumption of malice may arise from a reckless disregard for human life. A wanton and reckless state of mind may sometimes be the equivalent of a specific intent to kill, and such state of mind may be treated by the jury as amounting to such intention when the wilful and intentional performance of an act is productive of violence resulting in the destruction of human life. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but this presumption may be rebutted."

A charge somewhat similar to the last sentence quoted above was found unconstitutional in Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).[3] However, in Sandstrom the jury was not instructed that "this presumption may be rebutted." Sandstrom held that the charge "The law presumes that a person intends the ordinary consequences of his voluntary acts" is unconstitutional for two reasons: The jury may have interpreted the presumption as conclusive; the jury may have interpreted the presumption as shifting the burden of persuasion to the defendant on the element of intent. The Court held that either interpretation would violate the 14th amendment requirement that the state prove every element of a crime beyond a reasonable doubt.

We find no Sandstrom violation in the first two sentences of the jury instruction under attack. Indeed those two sentences clearly are nonconclusive and are in no way burden shifting. Regarding the third sentence, it is not subject to the Sandstrom defect that the jury may have interpreted it as being conclusive because the language "but this presumption may be rebutted" shows that it is not conclusive. Skrine v. State, 244 Ga. 520 (260 SE2d 900) (1979); Moses v. State, 245 Ga. 180 (2) (263 SE2d 916) (1980).

However, it might be argued that this very same language, "this presumption may be rebutted," could be interpreted as violating Sandstrom by shifting the burden of persuasion to the defendant on the question of intent. We find that under the instructions given in this case, the jury could not have interpreted the charge as shifting the burden of persuasion as to intent to the defendant.[4]

Here the trial court charged the jury in pertinent part as follows: "Ladies and gentlemen, I charge you this very important principle of law. Every person is presumed innocent until proved guilty. No person shall be convicted of a crime unless each essential element of such crime is proved beyond a reasonable doubt. The burden of proof

---

[3]The trial judge did not have the benefit of Sandstrom as it was decided shortly after the trial of this case. We do not here decide whether Sandstrom is retroactive (see Tyler v. Phelps, 622 F2d 172 (5th Cir. 1980)), as we find that this charge is not unconstitutional under Sandstrom for the reasons stated hereafter.

[4]"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U. S. 141, 146-147 (94 SC 396, 38 LE2d 368) (1973); Boyd v. United States, 271 U. S. 104, 107 (46 SC 442, 70 LE 857) (1926); Agnew v. United States, 165 U. S. 36, 50 (17 SC 235, 41 LE 624) (1897). In Sandstrom the Court found that the charge in issue was not cured by other instructions. 442 U. S. at 518, n. 7. In County Court of Ulster County v. Allen, 422 U. S. 140, 160-162 (99 SC 2213, 60 LE2d 777) (1979), the Court considered the charge as a whole.

rests upon the State to prove each essential element of the crime charged in this indictment beyond a reasonable doubt." The court charged the jury as to the meaning of "reasonable doubt" and later, after defining the crimes of malice murder, involuntary manslaughter and cruelty to children, put the burden of proof as to intent upon the state, saying: "Now as to intent. I further charge you that intent to commit the crime charged in this indictment is an essential element that the State must prove beyond a reasonable doubt. Intent is always a question for the jury and is ordinarily ascertained by acts and conduct. Intent may be shown in many ways, provided the jury finds that it existed from the evidence produced before them." Thus the jury was charged that the burden of proof was on the state to prove each essential element of the crime beyond a reasonable doubt, that intent was an essential element which the state must prove beyond a reasonable doubt, and that intent was a question for the jury to be found by them from the evidence. Hence the jury could not have understood the language "but this presumption may be rebutted" as shifting to the defendant the burden of persuasion as to intent. Viewing the charge as a whole, the jury could not have understood that the nonconclusive presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied, Sandstrom, 442 U. S. at 518, n. 7 at 519. *Skrine v. State,* supra.

The decision in Holloway v. McElroy, 474 FSupp. 1363 (M. D. Ga. 1979), relied upon by defendants is inapplicable. There the jury was instructed that the law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation, justification, mitigation or excuse, and the burden is on the defendant whenever an intentional homicide is proven to make out such circumstances to the satisfaction of the jury unless they appear from the state's evidence. The effect of the charge there was that once an intentional homicide was shown the burden was on the defendant "to show that it was done without malice" (474 FSupp. at 1366). In Holloway the defense was self-defense, thereby admitting that the homicide was intentional. The Holloway court found further fault with the charge in effectively putting the burden of proving self-defense on the defendant.

Mason v. Balkcom, 487 FSupp. 554 (M. D. Ga. 1980), is likewise inapplicable. There again the defense was self-defense and the jury was charged in effect that where a person uses a deadly weapon, in the usual manner, thereby causing death, "the law presumes an intention to kill" (487 FSupp. at 557). The charge found defective in Mason is wholly unlike the charge in the case before us. (The charge in Mason, considered as a whole, was found to be harmless error beyond a

reasonable doubt.)[5]

The recent decision in Tyler v. Phelps, 622 F2d 172 (5th Cir. 1980) is a direct application of Sandstrom. There the defendant was charged with first degree murder in that he had a "specific intent" to kill or inflict great bodily harm on "more than one person." The evidence showed that during a disturbance at a school in Louisiana Tyler was sent home and he boarded a bus. A crowd threw rocks at the bus. A shot was fired from the bus, killing one person and wounding another. The trial court charged the jury: "Presumptions are deductions or *conclusions* which the law *requires* the jury to make . . . *in the absence of evidence* in the case which leads the jury to a different or contrary conclusion. A presumption continues to exist only so long as it is not overcome or outweighed by evidence in the case to the contrary. But unless and until the presumption is so outweighed, *the jury is bound to find in accordance with the presumption. I charge you . . . that the defendant intended the natural and probable consequences of his act."* (622 F2d at 175 underscoring added to that emphasized in the decision.) The charge quoted above, particularly the last sentence, is substantially identical to that found unconstitutional in Sandstrom and the Fifth Circuit so held. The jury in Tyler was instructed in effect that the presumption was conclusive, or at least that the burden of proof to the contrary was upon the defendant. We find Tyler v. Phelps to be a direct application of Sandstrom, supra, albeit inapplicable here for the reasons stated above.

The jury instructions given in the case before us were not error. *Judgment affirmed. All the Justices concur.*

SUBMITTED MAY 2, 1980 — DECIDED
SEPTEMBER 16, 1980.

*Eugene W. Harper, Jr., Floyd W. Keeble, Jr.,* for appellants.
*Cleve Miller, District Attorney, Lindsay A. Tise, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, Michael R. Johnson, Assistant Attorney General,* for appellee.

---

[5]The prohibition against considering the charge as a whole, see United States v. Chiantese, 560 F2d 1244, 1255 (5th Cir. 1977), being supervisory, was not applied by the district court in Mason v. Balkcom, supra, in that habeas corpus (28 USCA § 2254) case brought by a state prisoner.