## S90A0479. JENKINS v. THE STATE.
(391 SE2d 397)

BELL, Justice.

Ronald Jenkins was found guilty of the felony murder of Bruno Johnson, a store detective for Rich's Department Store in downtown Atlanta.[1] Jenkins appeals, contending that the trial court erred in refusing to give a requested charge on self-defense; that the trial court improperly excluded the testimony of one of Jenkins' witnesses; that the trial court erred in allowing a state's witness to invoke the Fifth Amendment when asked whether he had seen one of Jenkins' companions stab Johnson; and that the circumstances of his arrest were so shocking as to offend due process and bar his prosecution. We affirm.

Michael Campbell, an assistant security manager for Rich's, testified that he observed Jenkins and a Bridgett Green removing clothing from a clothing rack and acting suspiciously. Campbell summoned Johnson and Richard Watts, another store detective, and instructed them to watch Jenkins and Green. A short time later, Campbell observed Johnson and Watts attempting to detain Jenkins. The three men were standing just inside exterior doors to the store. Campbell stated that Watts was holding Jenkins from behind and that Johnson was standing in front of him. He then noticed Johnson backing up and noticed that blood was on the wall, glass and floor. Campbell did not notice Green at that time. Campbell did not see a weapon, but he testified that Rich's security guards are not permitted to carry weapons while on duty. During the struggle, Watts released Jenkins, and Jenkins ran out of the store.

Richard Watts also testified concerning the struggle. He stated that Jenkins left the store and went approximately fifteen or twenty feet down the street, at which point Johnson and Watts, who were following Jenkins, spoke to and detained him. Jenkins did not resist

---

[1] The crime occurred on January 18, 1988. Jenkins was indicted on February 5, 1988, and was found guilty on November 3, 1988. Jenkins filed a motion for new trial on December 2, 1988. The court reporter certified the transcript on December 20, 1988. The trial court granted Jenkins' motion for new trial on September 21, 1989. However, upon motion for reconsideration by the state, the trial court set aside its September 21, 1989, order, and denied Jenkins' motion for new trial on November 16, 1989. Jenkins filed a notice of appeal on December 14, 1989. The appeal was docketed in this court on January 9, 1990, and was submitted for decision on briefs on February 23, 1990.

at that time. Johnson, Jenkins, and Watts returned to the store, and just after they entered an exterior door, Jenkins attacked Johnson, making a striking motion at him. Watts stated that Jenkins began to struggle with Johnson when he saw Green approach them from inside the store. Green began yelling, asking what Johnson and Watts were doing to Jenkins. Watts attempted to grab Jenkins, but Green blocked his efforts to do so. Watts eventually manuevered around Green and grabbed Jenkins from behind, around the neck and shoulders. According to Watts, Johnson then approached Jenkins, and Jenkins stabbed Johnson in the neck with a knife. Watts saw no weapon in Green's possession.

Jenkins testified in his defense at trial. He stated that after he left the store and was about twenty feet from the exit, Johnson grabbed him by the right arm and accused him of taking property from the store. He stated that Johnson patted him down, found a pocketknife in his coat pocket, and took possession of the knife. According to Jenkins, once the three men entered the exterior door, Johnson began "manhandling" him. When Jenkins asked Johnson to stop manhandling him, Johnson stated, "I will kick your _ _ _." Jenkins then told Johnson he was "not going to kick his _ _ _." Jenkins added that Johnson then struck him; that Watts grabbed him in a choke hold; that Johnson proceeded to kick and hit Jenkins as Watts held him; and that as Johnson was hitting Jenkins, Johnson had the knife, with the blade open, in his hand. Jenkins testified that he took the knife away from Johnson to protect himself. He added that while struggling to get away from Watts and Johnson, he might have struck Johnson with the knife. Jenkins stated that Green saw the fight and yelled at the officers to leave Jenkins alone, but that Johnson told Green to get out of the way and pushed her aside.

Medical testimony established that Johnson suffered two stab wounds to the neck that cut the carotid artery, causing Johnson's death. There was no evidence of any other stab wounds.

After the stabbing, Jenkins fled the state. He was eventually arrested in St. Louis, Missouri, after the television show "America's Most Wanted" dramatized the crime and aired a photograph of Jenkins.

1. Having reviewed the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to authorize a rational trier of fact to find Jenkins guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We conclude that Jenkins' first enumeration of error is without merit, as the trial court's charge on self-defense, though not given in the exact language requested by Jenkins, adequately presented to the jury the issue of self-defense, in the context of Jenkins resisting John-

son. See *Felker v. State*, 252 Ga. 351, 368 (3) (314 SE2d 621) (1984).

3. Jenkins argues that the trial court erred in refusing to allow Major R. A. Davis of the Atlanta Police Academy to testify that Johnson did not pass written exams there and was dismissed from the Academy. We find that the trial court did not abuse its discretion in limiting this testimony. See *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985).

4. Jenkins next contends that the trial court erred in permitting a state's witness, Larry Brown, to invoke the Fifth Amendment. Moreover, Jenkins argues that the court erred in refusing to allow him to question a Rich's security officer regarding a statement Brown made one day after the stabbing. In both instances, we conclude that, if any error occurred, it was harmless.

Larry Brown testified that, when Johnson was stabbed, he was standing across the street from the Rich's exit where the stabbing occurred. He testified that he saw the two security officers escort Jenkins back into the store, but he did not describe the fight. He added that he knew Jenkins and that Jenkins usually carried a knife in his sleeve.

On cross-examination, Brown described the fight between Johnson, Watts, and Jenkins, and stated that he saw Jenkins stab Johnson. Defense counsel then asked Brown whether he had given a statement to two security officers of Rich's the day after the stabbing. Brown responded that he had. Defense counsel then asked whether he had told those security officers that Green first stabbed Johnson in the side, and that Jenkins then stabbed Johnson. Brown invoked the Fifth Amendment, and, over defense objection, the court refused to require Brown to answer the question.

Following Brown's testimony, defense counsel then called Timothy Allen, one of the security officers who had taken Brown's statement. Allen testified regarding Brown's statement. According to Allen, Brown stated that he had come downtown on January 18 with Jenkins and Green to shoplift. Allen added that Brown stated that he first saw Green stab Johnson in the side and then saw Jenkins stab Johnson in the neck.

After Allen testified, defense counsel then called Joe Hardman, the other security officer who was present when Brown made his statement. The state objected to this officer's testimony, and the court sustained the objection.

On appeal Jenkins contends that the court erred in permitting Brown to invoke the Fifth Amendment, and in not permitting Jenkins to question Hardman about Brown's statement. However, even assuming the court erred on both rulings, we conclude any error was harmless, as Jenkins extensively questioned Allen regarding Brown's statement, and Allen repeatedly testified that Brown stated he first

234

saw Green stab Johnson in the side. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. Jenkins contends that the trial court erred in denying his motion to dismiss the indictment. Jenkins moved to dismiss on the ground that his arrest in St. Louis was illegal. On appeal Jenkins acknowledges that this Court has held that an illegal arrest is not a bar to a defendant's prosecution. *Lackey v. State*, 246 Ga. 331, 333-334 (2) (271 SE2d 478) (1980). However, relying on *United States v. Toscanino*, 500 F2d 267 (2nd Cir. 1974), and *Lujan v. Gengler*, 510 F2d 62 (2nd Cir. 1975), Jenkins argues that where an arrest, as Jenkins contends his was, is shocking and outrageous, it violates due process and bars a defendant's prosecution. Jenkins is correct that *Toscanino* and *Lujan* establish such a rule. However, we pretermit a decision on the validity of the Second Circuit's rationale,[2] as, even assuming the validity of *Toscanino* and *Lujan*, the circumstances of Jenkins' arrest clearly do not fit within such a rule.

*Judgment affirmed. All the Justices concur, except Smith, P. J., who concurs in the judgment only.*

DECIDED MAY 17, 1990 —<br>RECONSIDERATION DENIED JUNE 7, 1990.

*John A. Pickens,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Assistant District Attorneys, Michael J. Bowers, Attorney General, Leonora Grant,* for appellee.

---

[2] See *United States v. Matta-Ballesteros*, 700 FSupp. 528 (N.D.Fla. 1988), which questions the Second Circuit's rationale in light of more recent Supreme Court cases, including *United States v. Crews*, 445 U. S. 463 (100 SC 1244, 63 LE2d 537) (1980), a case this Court relied on in *Lackey v. State*, 246 Ga. 331 (271 SE2d 478) (1980).