A07A1146. THORNTON v. THE STATE.
(653 SE2d 361)

PHIPPS, Judge.

In a bifurcated trial, a jury found Timothy Nathaniel Thornton guilty of aggravated assault with a gun and possession of a firearm by a convicted felon. On appeal, he challenges the sufficiency of the evidence. In addition, he contends that the trial court gave erroneous jury instructions, impermissibly communicated with the jury, and erroneously rejected his claim of ineffective assistance of counsel. Because Thornton has shown no reversible error, we affirm.

1. Thornton contests the sufficiency of the evidence.

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. As an appellate court, we do not weigh the evidence, judge the credibility of

---

witnesses, or resolve evidentiary conflicts. The relevant question for this court is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some competent evidence to support each element necessary to make out the state's case, the jury's verdict will be upheld.[1]

Clifton Daniel, the victim of the aggravated assault, testified about the incident giving rise to the charges. One day in March 2004, Thornton confronted him about a girl while he was standing outside a residence with his sister. Thornton had a gun, shot rounds in the air, and threatened to hurt Daniel. Daniel did not have a gun and told Thornton that he did not want to fight him. Thornton passed the gun to a friend; Thornton and Daniel argued; Thornton then grabbed Daniel; and a fight between the two ensued.

Daniel's sister testified that when Thornton arrived at the residence that day, he "jumped out of the car" with a gun in his hand and confronted Daniel about money. Daniel had no gun and told Thornton that he did not want to fight him. Thornton then passed the gun to a person she identified at trial as Fred Wells; Thornton next hit Daniel; and a fistfight between Thornton and Daniel ensued. After the fistfight, Thornton took the gun back from Wells, shot in the air, and threatened to shoot Daniel. Daniel's sister called the police.

An officer who responded to the scene within minutes of the emergency dispatch testified that shell casings were found on the ground where the shooting incident reportedly happened. The officer testified that the casings had been recently fired because they were not "weathered." In other words, the officer explained, the casings did not appear to have been "stepped on, . . . rained on, or anything like that. They appeared to be fresh." Another responding officer testified that Thornton was soon found in a nearby, abandoned, "burned-out" trailer. He was alone, sweating, and sitting in a back room.

Thornton neither testified nor called witnesses, but introduced documentary evidence, including impeachment evidence that Daniel's sister had been convicted of a felony drug offense and the misdemeanor offense of giving a false statement to a police officer.

After the jury returned a guilty verdict on the charge of aggravated assault, the state introduced in evidence a certified copy of Thornton's 2003 conviction for aggravated assault. Thereupon, the jury returned a guilty verdict on the charge of possession of a firearm by a convicted felon.

---

[1] *Lawson v. State*, 275 Ga. App. 334, 335 (1) (620 SE2d 600) (2005) (footnotes omitted); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

On appeal, Thornton points to what he claims are weaknesses and inconsistencies in the evidence against him, including the impeachment evidence against Daniel's sister and discrepancies between her and Daniel's testimony. But such evidentiary issues were for the jury to resolve. Because there was competent evidence to support each element necessary to make out the state's case relative to the offenses of aggravated assault with a gun and possession of a firearm by a convicted felon, we uphold the jury verdicts.[2]

2. Thornton contends that the jury instruction on impeachment did not permit the jurors to find Daniel's sister impeached by her felony drug conviction. Thornton acknowledges, however, that the instruction as a whole did authorize the jurors to find Daniel's sister impeached by her misdemeanor conviction of giving a false statement to police.

Thornton takes issue with particular language in the impeachment instruction that a witness could be found impeached by a conviction "of a crime involving moral turpitude and that crime is a felony offense." But the Supreme Court of Georgia has said, "[F]or purposes of witness impeachment, crimes involving moral turpitude are restricted to the gravest offenses, constituting of felonies. . . ."[3] Further, "a witness may be impeached by proof of a conviction of any crime involving moral turpitude," which "term seems equivalent in this state to infamy, and would encompass all felonies."[4] Accordingly, the language cited in this case was not reversible error, but it was sufficiently tailored to the evidence and adequately conveyed the relevant principles, such that there is no reasonable probability that it confused or misled the jurors in any way prejudicial to Thornton.[5]

3. Thornton contends that language used to instruct the jury on the offense of possession of a firearm by a convicted felon was erroneous. The court instructed the jury:

> [A]ny person who has been previously convicted of any forcible felony shall be prohibited from thereafter possessing a firearm. A forcible felony is any felony which involves the use or threat of physical force or violence against another person. An aggravated assault is considered a forcible felony. A firearm includes any type of handgun, rifle, shotgun, or

---

[2] See OCGA §§ 16-5-21 (a) (2); 16-11-131.

[3] *Hawes v. State*, 266 Ga. 731, 733-734 (3) (470 SE2d 664) (1996) (punctuation and footnote omitted).

[4] *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991) (citations omitted).

[5] See generally *Barron v. State*, 261 Ga. 814, 816 (4) (411 SE2d 494) (1992); *Jenkins v. State*, 260 Ga. 231, 232 (2) (391 SE2d 397) (1990).

any other weapon which will or which can be converted to expel any projectile by the action of an explosive or electrical charge.

Thornton points out that the indictment in this case did not allege a previous conviction of a "forcible felony" and that the definition of possession of a firearm by a convicted felon does not require that the previous felony was "forcible."

OCGA § 16-11-131 provides that "[a]ny person . . . who has been convicted of a felony by a court of this state . . . and who . . . possesses . . . any firearm commits a felony. . . ."[6] It further defines "felony" as "any offense punishable by imprisonment for a term of one year or more,"[7] which includes the offense of aggravated assault.[8] The indictment pertinently charged that Thornton was in possession of a firearm, after having been convicted of "[a]ggravated [a]ssault, a felony under the laws of this State. . . ." Regarding the underlying aggravated assault, the state showed that, in 2003, Thornton pled guilty and was convicted of aggravated assault upon a person "by discharging [a] firearm from within a motor vehicle toward [the person], thereby attempting a violent injury to said person. . . ."

Although the cited language did not charge the jury in the precise statutory language defining possession of a firearm by a convicted felon, no reversible error occurred. "Jury instructions must be read and considered as a whole."[9] Viewed as a whole, the instructions sufficiently limited the jury's consideration to the elements of possession of a firearm by a convicted felon as charged in the indictment and did not authorize the jury to convict Thornton of that crime in a manner not alleged.[10] "Under the circumstances of this case, there is no reasonable possibility that the jury was misled and confused and thus convicted [Thornton] of [possession of a firearm by a convicted felon] in a manner not alleged in the indictment."[11]

4. Thornton asserts that the trial court impermissibly communicated with the jury outside his and his attorney's presence.[12]

At the motion for new trial hearing, Thornton cited a handwritten document marked as "Court's Exhibit 1." The document stated,

---

[6] OCGA § 16-11-131 (b).

[7] OCGA § 16-11-131 (a) (1).

[8] OCGA § 16-5-21 (b)-(i).

[9] *Hammonds v. State*, 263 Ga. App. 5, 7 (2) (587 SE2d 161) (2003) (footnote omitted).

[10] See *Simpson v. State*, 277 Ga. 356, 357-358 (3) (589 SE2d 90) (2003); *Hammonds*, supra; *Barron*, supra; *Jenkins*, supra.

[11] *Hammonds*, supra (footnote omitted); see generally *Wyman v. State*, 278 Ga. 339, 341-342 (4) (602 SE2d 619) (2004).

[12] See generally *Hanifa v. State*, 269 Ga. 797, 806-809 (6) (505 SE2d 731) (1998) (concerning the issue of trial courts communicating with juries).

"Please provide Defendant exhibits #1 & #4," followed by "Signed [name of foreperson]." Next, the document stated, "All exhibits that go out with the jury are in the jury's hands," followed by the trial judge's name.

In his appellate brief, Thornton cites nothing in the transcript for either the trial or the hearing on motion for new trial to show that this apparent communication between the jury and the trial court was outside his or his attorney's presence. Instead, he concedes that the record is silent about the process by which the communication occurred. Notably, the transcript of the motion for new trial hearing shows that Thornton's post-trial counsel called Thornton's trial attorney to testify, but failed to ask him about the document. And neither Thornton nor the prosecuting attorney was called to testify at the hearing. The trial judge remarked at the hearing that she had no specific memory of the document, but expounded:

> [M]y general practice, if the bailiff hands me a note, I send them into the courtroom, show the attorneys the note. I come in the courtroom, bring the defendant in the courtroom. We talk about the note. I make a copy of the note and ask them if I can make a written response or if they want me to bring them in. If the jury just sent me a note and I sent them a note back and never told anybody about it, I don't know how a copy of it would have become a part of the record. . . . I don't believe that the jury sent me a note and I sent them a note back and didn't bring it in and discuss it. . . . I firmly believe it happened in the courtroom in front of the defendant, but the transcript doesn't reflect it.

Thornton complains before this court, "The State, and indeed, the trial court, could have attempted to perfect the record in regard to this matter, but did not." But on appeal, "[i]t is the duty of appellant to show error by the record. . . ."[13] Furthermore, "[t]he trial court is authorized by OCGA § 5-6-41 (f) to accept amendments to the transcript in order . . . to make the transcript conform to the truth."[14] Accordingly, Thornton might have perfected the record in regard to this matter, but did not.

Thornton has failed to carry his duty to show error by the record.[15] His reliance upon cases such as *Carter v. State*[16] and *Lindsey*

---

[13] *Thompson v. State*, 248 Ga. App. 74, 75 (544 SE2d 510) (2001).

[14] *Bates v. State*, 228 Ga. App. 140 (2) (491 SE2d 200) (1997).

[15] See generally *Roberts v. State*, 267 Ga. 669, 671-672 (3) (482 SE2d 245) (1997).

[16] 273 Ga. 428, 429 (3) (541 SE2d 366) (2001) ("the transcript of the ensuing conversation

*v. State*[17] is misplaced.

5. Thornton contends that his trial counsel rendered ineffective assistance by failing to call as a witness Fred Wells, the person to whom the evidence showed he (Thornton) passed the gun during the altercation.

To prevail on a claim of ineffectiveness of counsel, a defendant must establish, pursuant to *Strickland v. Washington*,[18] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[19] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[20]

Initially, Wells was charged as a party to the aggravated assault and also charged with possession of a firearm by a convicted felon. Wells thereafter entered a negotiated *Alford* plea to a single crime of issuing terroristic threats, consenting to "about a year" of probation revocation. Before Thornton's trial, Thornton's trial attorney reviewed the transcript of Wells's plea hearing, during which hearing Wells stated under oath that he had neither seen nor heard the firing of a gun during the incident.

Thornton's trial attorney testified that the decision not to call Wells had been a matter of trial strategy. He gave three reasons why he had determined that the jurors might have found Wells not credible. First, the jurors might have found Wells impeached because of his two prior felony convictions. Second, the jurors might have discredited Wells's account of the incident, given his testimony at his plea hearing that he was inside a trailer during the incident — not outside, at the scene, where the state's witnesses placed him. Third, the jurors might have decided that Wells's testimony was motivated only by his desire to avoid potentially harsher punishment pursuant to guilty verdicts on the charges he was facing. Thornton's trial attorney testified that, after consulting with Thornton, he concluded that issues surrounding Wells's credibility outweighed any value his testimony might have added to the defense, particularly in light of the fact that the state's case rested, in part, on the testimony of a convicted felon.

---

between the trial court and the jurors show[ed] that the trial court went outside the bounds of [the] agreement" of the parties in its communication with the jurors).

[17] 277 Ga. App. 18 (625 SE2d 431) (2005) (defendant's trial attorney testified at the motion for new trial hearing that the trial judge informed her that he had received and answered a question from the jury only after he had done so).

[18] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[20] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (footnote omitted).

"There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[21] Counsel's decision whether to call a specific witness is a strategic one.[22] Thornton's trial attorney articulated a reasonable strategic decision regarding whether to call Wells, and his decision not to call Wells did not constitute deficient performance.[23] Thus, Thornton has failed to show that the trial court erred in rejecting his claim of ineffective assistance of counsel.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 25, 2007 —

*Glynn R. Stepp*, for appellant.
*Daniel J. Porter, District Attorney, Kimberly A. Gallant, Assistant District Attorney*, for appellee.

[21] *Conaway*, supra (citation omitted).
[22] *Walker v. State*, 281 Ga. 521, 526 (7) (640 SE2d 274) (2007).
[23] See *Fortson v. State*, 280 Ga. 435, 437 (2) (b) (629 SE2d 798) (2006).
[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).