## S98A1216. CARTER v. THE STATE.
### (506 SE2d 124)

SEARS, Justice.

Benny Carter was found guilty of murder, aggravated assault, and possessing a firearm while committing a crime.[1] Carter claims on appeal that because he was denied counsel during questioning by law enforcement officers, his convictions must be reversed. Having reviewed the record, we find that Carter declined to exercise his right to have an attorney present during his interrogation. We also find that no errors occurred during Carter's trial that require reversal. Therefore, we affirm.

The evidence introduced at trial was sufficient to enable a rational trier of fact to find that on May 14, 1994, Carter and another man, Ragsdale, argued in the parking lot of an Atlanta gasoline station. The argument ended when Carter pointed a pistol in Ragsdale's face. Approximately twenty minutes later, while playing dice with a group of people, Carter disagreed with one of the other players. That disagreement, too, ended when Carter pointed a pistol in the other player's face. Shortly thereafter, Carter stopped his car on the road to speak with an acquaintance. A car pulled up behind Carter, and that car's driver honked the horn, indicating that Carter should move his car, so that the other car could pass. Carter did not move his car, and

---

[1] The murder was committed on May 14, 1994, and Carter was indicted on August 26, 1994 for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. A trial was held from October 30-November 3, 1995, and Carter was found guilty of all counts charged against him. He was sentenced to life imprisonment for the malice murder conviction, with the felony murder conviction vacated by operation of law; twenty concurrent years imprisonment for the aggravated assault conviction; and five consecutive years imprisonment for the possession of a firearm conviction. The transcript was certified by the court reporter on October 11, 1996. Carter timely filed a new trial motion on December 4, 1995 which was amended on November 13, 1997, and denied on November 21, 1997. Carter's notice of appeal was timely filed on December 22, 1997, and the matter was submitted for decision without oral argument on June 15, 1998.

an argument ensued between the occupants of the car and Carter. Carter exited his car and fired five shots into the back of the other car, killing passenger Winston Edwards, Jr. Upon his arrest, Carter gave a statement to homicide investigators, in which he admitted firing the fatal shots, but claiming self-defense because someone from the back of the car had threatened him.

1. The evidence introduced at trial was sufficient to enable any rational trier of fact to conclude beyond a reasonable doubt that Carter is guilty of the crimes for which he was convicted.[2]

2. Carter claims that his custodial statement was improperly admitted at trial because it was made after he requested that an attorney be present during his interrogation. However, the transcript clearly shows that while being advised for the second time of his right to have an attorney present during questioning, Carter responded by asking, "Can I have one?" At that point, Carter's interrogator stated that the questioning would cease until an attorney was obtained for Carter. Carter then stated that although he understood he was entitled to have an attorney present while being questioned, he did not want one at that time, and that he wished his interrogation to continue without an attorney present. The record shows that when Carter asked, "Can I have one?" he was trying to determine whether an attorney could be appointed at a later time. Thus, the record shows that Carter did not make an unequivocal invocation of his right to counsel during questioning, and the trial court did not err in admitting his custodial statement into evidence.[3]

3. The trial court did not err by admitting testimony recounting the incidents at the gasoline station and the dice game, in which Carter pointed a gun in the face of other individuals. The incidents occurred within approximately one hour of the shooting, and showed a pattern of extremely aggressive conduct that culminated in the murder. Furthermore, these acts were relevant to show Carter's frame of mind in the time period immediately preceding the murder, and his willingness at that time to use a gun to threaten violence when provoked. "When there is evidence of other criminal transactions which show . . . [a] course of conduct pointing to or leading to the crime for which the defendant is being tried . . . such evidence may be admitted as part of the res gestae."[4]

4. Because it was admissible as part of the res gestae, the trial court did not err by failing to treat the incidents at the gasoline sta-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Davis v. United States*, 512 U. S. 452, 459 (114 SC 2350, 129 LE2d 362) (1994); see *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981).

[4] *Spurlin v. State*, 228 Ga. 2, 5 (183 SE2d 765) (1971); see OCGA § 24-3-3.

tion and the dice game as "extrinsic act" evidence.[5]

5. Carter urges that the State improperly argued his future dangerousness to the jury by urging that the community's safety could only be ensured by convicting Carter. While Carter did object to this argument at trial, we note that his objection was that the prosecutor was invading the province of the jury by expressing a personal opinion on guilt. Carter did not object that his future dangerousness was being put before the jury. Thus, it is not clear that this issue has been preserved for appeal. Furthermore, we note that when Carter was tried in October 1995, the State was permitted by law to argue during the guilt-innocence phase of a trial that a defendant represented a future danger to society, so long as that argument was based upon evidence introduced at trial.[6] It was not until a year after Carter's conviction that arguments in the guilt-innocence phase regarding a defendant's future dangerousness were disallowed.[7] In any event, considering the overwhelming evidence of Carter's guilt, it is highly unlikely that this single portion of the closing argument contributed to the guilty verdict, and thus any error associated with the State's argument was harmless.[8]

6. Having reviewed the trial court's charge to the jury as a whole,[9] we conclude that the charge regarding malice did not improperly comment on the evidence,[10] and was permissible under OCGA § 17-8-57. The charge as a whole did not, as Carter asserts, attempt to tell the jury what had been shown by the evidence. Rather, the charge made clear that the jury was the ultimate arbiter of fact, and it specifically instructed that if the jury found that, while scuffling with another, Carter drew a deadly weapon and thereby escalated the argument, then the jury was entitled, but not obligated, to infer malice therefrom. That charge was permissible.[11]

7. At trial, the State stipulated to Carter's introduction into evidence of a police report that charged the murder victim, Edwards, with aggravated assault. The police report stated that Edwards and another man had once chased an individual whom they believed had burglarized the other man's home, and assaulted the individual with a baseball bat. Carter intended the evidence to support his justifica-

---

[5] See, e.g., *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

[6] *Vance v. State*, 262 Ga. 236 (416 SE2d 516) (1992), overruled, 267 Ga. 209 (477 SE2d 807) (1996).

[7] See *Sterling v. State*, 267 Ga. 209 (477 SE2d 807) (1996).

[8] See *Wyatt v. State*, 267 Ga. 860, 865 (485 SE2d 470) (1997).

[9] *Mullinax v. State*, 255 Ga. 442 (339 SE2d 704) (1986).

[10] The trial court charged the jury that it could "infer malice, if you wish to do so, from the use of a deadly weapon and from evidence which shows that the defendant and the victim were arguing and the defendant pulled a gun and escalated the fight."

[11] *Dixon v. State*, 243 Ga. 46, 47 (252 SE2d 431) (1979).

tion defense by showing Edwards' purported propensity for violence. In response, the State contended that Edwards had not assaulted anyone, but rather had merely effectuated a citizen's arrest. At the State's request, the trial court gave a jury charge on citizen's arrest.

Even though slight evidence is enough to justify the giving of a jury charge,[12] we conclude there was not sufficient evidentiary support in this case to warrant the trial court's charge on citizen's arrest. Although a private person may make a citizen's arrest under OCGA § 17-4-60, only force that is reasonable under the circumstances may be used to restrain the individual arrested.[13] Certainly under the facts that were recounted in the police report, Edwards' alleged assault of the individual with a baseball bat entailed the use of unreasonable force, and could not have been part of a legitimate citizen's arrest. Accordingly, the trial court erred by charging the jury on citizen's arrest. However, in light of the overwhelming evidence of Carter's guilt, there is no reasonable likelihood that the erroneous charge lessened the State's burden to prove all essential elements of the crimes charged beyond a reasonable doubt, and therefore the error was harmless.[14]

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in the judgment only as to Division 7.*

DECIDED OCTOBER 5, 1998.

*Sarina J. Woods,* for appellant.

*Paul L. Howard, District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.

---

[12] *Davis v. State,* 269 Ga. 276, 279 (496 SE2d 699) (1998).

[13] *Hayes v. State,* 261 Ga. 439, 443 (405 SE2d 660) (1991).

[14] *Bridges v. State,* 268 Ga. 700 (492 SE2d 877) (1997).