## A02A1840. AYRES v. THE STATE.

(576 SE2d 597)

JOHNSON, Presiding Judge.

James Ayres was indicted for serious injury by vehicle, driving under the influence of alcohol, reckless driving, and driving with a suspended license. He moved to suppress evidence of statements he made to the police and of breath and blood test results. The trial court denied the motion, and we granted Ayres' application for interlocutory review of the trial court's ruling. Having reviewed the entire record, we find no error and therefore affirm the trial court's denial of the motion to suppress.

At 7:40 a.m., on May 12, 2000, Ayres was driving his car on Interstate 16 when he tried to pass a pickup truck driven by Krenson Kniphfer. Ayres, who had been up late drinking alcohol the night before, lost control of his car and hit the truck. It rolled over several times, and Kniphfer's son, who was riding in the truck, was thrown onto the highway and was seriously injured.

Kniphfer kneeled by his son on the highway and held his hand. Ayres came to them and asked Kniphfer if his son was all right. Kniphfer smelled alcohol on Ayres. He stood up and punched Ayres in the face. Ayres fell to the ground. Kniphfer returned to his son's side. A few moments later he went back to Ayres and again knocked him to the ground.

At 7:52 a.m., a Bulloch County sheriff's sergeant arrived at the accident scene. Although he was the first law enforcement officer to arrive, the sergeant was not the investigating officer because jurisdiction over such accidents belongs to the state patrol. Bystanders told the sergeant about the altercations between Kniphfer and Ayres, and the sergeant saw that Ayres was bleeding and had a torn shirt. Ayres told the sergeant that he was not injured from the wreck but from having been beaten by Kniphfer. Ayres declined medical attention. The sergeant then placed Ayres in the back seat of his patrol vehicle. The sergeant testified that he had not arrested Ayres, but had put him in the car solely for his own safety, to protect him from Kniphfer. The sergeant did not put handcuffs on Ayres, and there were handles on the back seat doors so they could be opened from inside the vehicle.

At 7:57 a.m., a state trooper arrived to investigate the accident. The sheriff's sergeant told him that the drivers of the vehicles had a physical altercation after the accident, so he had separated them and put Ayres in his patrol car for his own safety. The trooper got driver's licenses from Kniphfer and Ayres. The trooper obtained a blood sample from Kniphfer at the scene so he could then go to the hospital to be with his son.

The trooper then went to talk to Ayres about the accident. Ayres told the trooper that he had tried to pass the truck and lost control of his car. The trooper smelled alcohol and saw that Ayres' eyes were glassy and bloodshot. He asked Ayres if he had been drinking that morning. Ayres responded that he had not, but that he had been up late the night before and had drunk eight or nine beers. He said he was running late for work when the accident occurred.

The trooper asked Ayres to submit to an alco-sensor breath test. Ayres consented to the test, which was positive for alcohol. At that point, the trooper arrested Ayres for driving under the influence of alcohol. The trooper put Ayres into his own patrol vehicle and read to him the implied consent notice. Ayres agreed to submit to a blood test, so the trooper then took him to a hospital to have his blood drawn.

After the blood test, the trooper took Ayres to the sheriff's department. Ayres was holding his side and told the trooper that was where Kniphfer had punched him after the accident. The trooper asked Ayres if he wanted to speak to a deputy about that fight. Ayres said he did not, but the trooper had him write a brief statement about Kniphfer having hit him. Ayres was subsequently charged with the driving offenses arising from the accident.

1. Ayres argues that the trial court erred in not suppressing evidence of the alco-sensor breath test and of the statements he made to the trooper because the trooper failed to inform him of his *Miranda*[1] rights before questioning him. Under *Miranda*, individuals who are in custody must be advised of their rights against self-incrimination before they may be interrogated.[2] Ayres contends that the trooper should have read him his *Miranda* rights because he had already been taken into custody in two different ways before the trooper arrived. Ayres alleges that Kniphfer first placed him under citizen's arrest, and thereafter the sheriff's sergeant also took him into custody by putting him in the patrol car. Ayres' allegations are without merit because the trial court was authorized to find that he was not placed under either citizen's arrest by Kniphfer or formal arrest by the sergeant, but was arrested later by the trooper after he made the incriminating statements and failed the roadside breath test.

On appeal from a motion to suppress, we view the evidence in a light most favorable to upholding the trial court's judgment.[3] The credibility of witnesses and the weight to be given to their testimony

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[2] *Morrissette v. State*, 229 Ga. App. 420, 421 (1) (a) (494 SE2d 8) (1997).
[3] *Sanders v. State*, 247 Ga. App. 170 (543 SE2d 452) (2000).

rest with the trier of fact.[4] The trial court's findings of facts must therefore be accepted unless clearly erroneous.[5]

As for Ayres' claim of a citizen's arrest, the evidence does not establish that Kniphfer ever attempted to place Ayres under citizen's arrest. Rather, the evidence shows that, in the emotional aftermath of a terrible crash, Kniphfer lashed out at Ayres and twice knocked him to the ground. Under such facts, Kniphfer's altercations with Ayres could not have been part of any legitimate attempt at a citizen's arrest under OCGA § 17-4-60.[6] Because there was no citizen's arrest, Ayres' claim that he was in custody and entitled to *Miranda* warnings on that basis must fail.

Ayres' contention that he was taken into custody when the sergeant placed him in his patrol car must also fail because the evidence, viewed in a light most favorable to the trial court's ruling, shows that Ayres was put in the car only for his own safety and not because he was under arrest. The sergeant testified unequivocally that he did not arrest Ayres, that he put Ayres in the car only to protect him from Kniphfer, that he did not put handcuffs on Ayres, and that there were handles on the car doors so Ayres could have gotten out of the car. Moreover, given that he was involved in a motor vehicle collision involving serious injuries, Ayres was legally obligated to remain at the scene.[7]

"*Miranda* protections adhere when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. A court should evaluate the second prong of the test objectively: an individual is in custody if a reasonable person in the place of the defendant would feel so restrained as to equate to a formal arrest."[8] Under the totality of the circumstances here, the trial court was authorized to conclude that Ayres was not in custody because a reasonable person in his place would not have felt that he was under a formal arrest, but would have understood that he could not simply leave the scene of such a serious accident and that he had been placed in the patrol car only for his own safety.

Because Ayres was not placed under citizen's arrest by Kniphfer or under formal arrest by the sergeant having him sit in the patrol car, there is no error in the trial court's denial of the motion to suppress on those grounds.

---

[4] Id.

[5] Id.

[6] See *Carter v. State*, 269 Ga. 891, 893-894 (7) (506 SE2d 124) (1998) (assault entailing unreasonable force is not a legitimate citizen's arrest because only force that is reasonable under the circumstances may be used to restrain individual arrested).

[7] *Morrissette*, supra.

[8] (Citations omitted.) *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001).

2. Ayres complains that the trial court should have excluded the results of the blood test because the implied consent warning was not given to him in a timely fashion after he was arrested. Ayres again premises this complaint on his assertions that he was placed under citizen's arrest by Kniphfer and then formally arrested when the sheriff's sergeant had him sit in the patrol car. Thus, he concludes, when the state trooper read him the implied consent warning an hour later, it was too late.

Ayres' complaint is without merit because, as discussed above in Division 1, there was no citizen's arrest and Ayres was not in custody when the sergeant asked him to sit in the patrol car for his own safety. Rather, Ayres was arrested by the state trooper only after he made incriminating noncustodial statements and failed an alcosensor breath test. Immediately after that lawful arrest, the trooper read the implied consent warning to Ayres. The trooper therefore complied with the requirement that the arresting officer must give the implied consent warning at the time of arrest.[9] Accordingly, the trial court did not err in refusing to suppress the blood test results.[10]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JANUARY 13, 2003 —
RECONSIDERATION DENIED JANUARY 24, 2003 —

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*R. Joseph Martin III, District Attorney, Richard A. Mallard, Assistant District Attorney*, for appellee.

[9] OCGA § 40-6-392 (a) (4).
[10] See *Morrissette*, supra at 424 (2) (b).