A04A1739, A04A1740. MORRISON v. THE STATE (two cases).
(611 SE2d 720)

MIKELL, Judge.

The Gwinnett County District Attorney's Office filed two unrelated accusations against Joseph R. Morrison on October 1, 2001. In Accusation No. 01-B-03649-8, Morrison was charged with possession of methamphetamine (Count 1) and reckless driving (Count 2). In Accusation No. 01-B-03650-8, Morrison was charged with possession of a firearm by a convicted felon (Count 1), discharge of a firearm near a public highway (Count 2), and obstruction of a law enforcement officer (Count 3). Morrison was tried on both matters after he was transferred to this state pursuant to the Interstate Agreement on

Detainers ("IAD") on a detainer for the wholly unrelated crime of terroristic threats. The terroristic threats charge was dismissed before the trials on the crimes underlying this appeal began. Morrison was convicted of all of the charges in both accusations.[1]

In Case No. A04A1739, Morrison appeals his convictions for possession of methamphetamine and reckless driving, contending that: (1) his case should have been dismissed because the state violated the IAD by failing to return him to the sending jurisdiction once the charges on which his detainer had been issued were dismissed; (2) the trial court erred by denying his motion to suppress the methamphetamine; (3) his trial counsel rendered ineffective assistance; and (4) the evidence was insufficient to support the verdict. In Case No. A04A1740, Morrison appeals his conviction for possession of a firearm by a convicted felon, discharge of a firearm near a public highway, and obstruction of a law enforcement officer, contending that: (1) he received ineffective assistance of counsel because his trial counsel failed to argue that his case should have been dismissed due to the state's violation of the IAD; (2) the trial court erred by sentencing him as a recidivist; and (3) the evidence was insufficient to support the verdict. We affirm Morrison's convictions but remand for resentencing on Count 1 in Case No. A04A1740.

The undisputed facts show that Morrison was serving a 63-month federal sentence for a weapons crime in a United States penitentiary in Florida[2] when the State of Georgia lodged a detainer against him for the crime of terroristic threats, pursuant to OCGA § 42-6-20.[3] Pursuant to Article III (a) of the IAD, Morrison sent a written request for a final disposition of the terroristic threats charge to the Georgia prosecutor triggering his rights to be tried on the terroristic threats charges within 180 days. The request was received by the prosecutor on October 21, 2002.[4] Morrison was subsequently transferred to Georgia to be tried on these charges. The Georgia prosecutor, however, chose not to pursue the terroristic threats charges, and, in accordance with Article V (a) of the IAD, they were

---

[1] In connection with the first accusation, Morrison was sentenced to twelve years confinement on Count 1, with the first six years to run concurrent with a prior federal sentence, and twelve years on Count 2 to run concurrent to the sentence on Count 1. Regarding the second accusation, Morrison was sentenced to five years to serve as a recidivist pursuant to OCGA § 17-10-7 (c) on Count 1, to run concurrent to the sentence imposed on Count 1 in the first case, with credit for time served, and twelve months on Counts 2 and 3 to run concurrent with Count 1.

[2] Morrison will complete his federal sentence in January 2006.

[3] The detainer is not included in the record, but there is no dispute that it was lodged in accordance with the IAD.

[4] Morrison's response to the detainer is also not included in the record, but there is no dispute that it was served properly in accordance with the IAD.

dismissed with prejudice.

On April 28, 2003, Morrison, acting pro se, filed motions to dismiss both cases, arguing that the charges pending against him should be dismissed due to the state's failure to try him on those charges within the 180 days allowed under Article III of the IAD. The trial court did not issue an order on either written motion. The state continued to hold Morrison, who was tried and convicted.

In both appeals, Morrison contends that his convictions must be reversed because, among other things, (1) the speedy trial provisions of the IAD required the state to try him on *all* outstanding charges in Georgia within 180 days and (2) the state violated the IAD by continuing to hold him in Georgia after the terroristic threats charges were dismissed against him. It is undisputed that Morrison was not tried for the crimes underlying his appeals until after the terroristic threats charge had been dismissed and that the state never lodged a detainer for the underlying crimes, a clear violation of the IAD. The question on appeal, however, is what remedy, if any, does a defendant have under these facts. Though we agree that the state violated the IAD when it retained Morrison, we do not agree that the appropriate remedy for the state's error is the reversal of Morrison's convictions.

1. The explicit language of the IAD shows that the state was not required to try Morrison on all outstanding charges in Georgia within 180 days regardless of whether the charges were related to the crime upon which the detainer was based. Article III of the IAD provides, in relevant part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . .
>
> (d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations

or complaints *on the basis of which detainers have been lodged* against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. . . . If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

(Emphasis supplied.)

It is clear from the language of the IAD that its speedy trial provisions apply exclusively to "untried indictments, informations or complaints *on the basis of which detainers have been lodged* against the prisoner." Therefore, the speedy trial provisions of the IAD applied only to the terroristic threats charges, and Morrison's contention that the speedy trial provisions applied to the crimes which form the basis of this appeal is wholly without merit.

2. Morrison further contends that his conviction must be reversed because the state violated Article V of the IAD by continuing to hold him in Georgia after the terroristic threats charges were dismissed against him. We agree that the state violated the IAD; however, Morrison's conviction need not be reversed because Morrison has failed to show that the violation of the IAD prejudiced him in any way.

Article V (d) of the IAD provides:

The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

In this case, the state admits that, in direct contravention of Article V (d) of the IAD, it retained custody of Morrison in Georgia in order to prosecute him on charges which were completely separate from and which did not arise out of the same transaction as the terroristic threats charges on which his detainer was based. Given this admission that the IAD was violated, we must focus on what remedy, if any, to which Morrison may be entitled.

Unlike other provisions of the IAD,

Article V (d) does not contain a specific dismissal remedy, [and] the goals which the Act was designed to promote are

not compromised by the prosecution of appellant on outstanding charges which were not the basis of the detainer. Article V (d) is meant to safeguard the prisoner's right to contest the transfer by appealing to the Governor of the sending state pursuant to Article IV (a) of the IAD.[5]

Accordingly, it has generally been held that a violation of Article V (d) warrants a reversal only if it can be shown to have caused actual prejudice to the defendant.[6]

Morrison has made no showing that he was prejudiced from being tried immediately on other outstanding charges in Georgia rather than being returned to federal custody in Florida and then later, again, brought to Georgia for trial. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court."[7] Accordingly, in the absence of a showing of harm caused by Morrison's retention in Georgia, his argument that his conviction must be reversed on this basis must fail.

## Case No. A04A1739

Construed in favor of the verdict, the evidence shows that at approximately 10:15 p.m. on May 24, 2001, Officer D. W. Phillips of the Lawrenceville Police Department's uniform patrol division, observed a small, white car traveling eastbound on Old Norcross Road, which appeared to be traveling in excess of the posted speed limit of 45 miles per hour. Officer Phillips testified that he followed the car and observed it cross the centerline twice while driving at least 80 miles per hour; that Morrison was driving on the wrong side of the roadway as he negotiated the curves in the road; that Phillips activated his emergency lights and pulled Morrison over in a nearby parking lot; that Morrison was unable to provide a driver's license or proof of insurance; that Phillips explained to Morrison that he stopped him because he was driving in an unsafe manner; and that he arrested Morrison for reckless driving and because he had no driver's license and proof of insurance. Officer Phillips handcuffed Morrison, patted him down, removed his wallet, and placed Morrison in the back of his patrol car.

---

[5] *Cooney v. Fulcomer*, 886 F2d 41, 44 (III) (3rd Cir. 1989).

[6] See, e.g., *Kotteakos v. United States*, 328 U. S. 750 (66 SC 1239, 90 LE 1557) (1946); *Commonwealth v. Boyd*, 451 Pa. Super. 404, 410-412 (679 A2d 1284) (1996); *Parker v. United States*, 590 A2d 504, 510 (III) (1991).

[7] (Citation and punctuation omitted.) *McCollum v. State*, 258 Ga. App. 574, 579 (3) (574 SE2d 561) (2002).

When they arrived at the jail, Officer Phillips gave Morrison's wallet to Deputy A. Smith of the Gwinnett County Sheriff's Office, who was in charge of conducting inventories of all arrestees' belongings. While Deputy Smith searched Morrison's wallet, Officer Phillips stood nearby and logged Morrison into the jail. Deputy Smith returned Morrison's wallet to Officer Phillips, who opened it and retrieved a small plastic bag that contained what was later determined to be methamphetamine.

3. In his second enumerated error, Morrison argues that the trial court erred by denying his motion to suppress the methamphetamine because the stop was pre-textual and the search of his wallet at the jail was not permissible. We disagree.

"On appeal from a motion to suppress, we view the evidence in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight to be given to their testimony rest with the trier of fact. The trial court's findings of facts must therefore be accepted unless clearly erroneous."[8]

> Investigative stops of vehicles, like other *Terry*-type stops, are illegal if based only on an "unparticularized suspicion or hunch." There must be a specific, articulable suspicion which is determined by looking at the totality of the circumstances — objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer.[9]

The trial court must determine "whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing."[10] We find that they were not. Here, the evidence shows that Officer Phillips stopped Morrison because he exceeded the speed limit and crossed the centerline twice. Accordingly, we find no abuse of discretion in the trial court's determination that Officer Phillips's decision to stop Morrison was reasonable. In doing so, we reject Morrison's argument that the stop was not authorized because there were no other persons or cars in the

---

[8] (Footnotes omitted.) *Ayres v. State*, 259 Ga. App. 290, 291-292 (1) (576 SE2d 597) (2003).

[9] (Citations and punctuation omitted.) *State v. Armstrong*, 223 Ga. App. 350, 351 (2) (477 SE2d 635) (1996). See also *Dunbar v. State*, 228 Ga. App. 104, 111 (4) (491 SE2d 166) (1997) (officer authorized to stop vehicle and make arrest based on his observations and opinions as to the car's speed).

[10] (Citation and punctuation omitted.) *Armstrong*, supra at 352 (2).

immediate vicinity. Reckless driving does not involve specific, intended victims. "Instead, it is the act of driving in such a manner as to demonstrate a reckless disregard for all people or property — generally — whether or not any specific person or property is, in fact, endangered at the time of the indicted act."[11]

We also reject Morrison's argument that the search of his wallet was illegal because it was investigatory. Deputy Smith testified that it was the policy of the police department to perform an inventory of the personal items of arrestees and that their wallets are routinely searched. Deputy Smith further testified that upon discovering suspected contraband, the department's policies and procedures mandated that she turn the substance over to the arresting officer. Thus, when Deputy Smith returned Morrison's wallet to Officer Phillips, she was simply following the rules of her department. Therefore, "we find the instant search reasonable because the police officer was, in good faith, conducting an inventory without any investigative intent. Accordingly, it was not violative of appellant's constitutional rights and it was not error to deny [his] motion to suppress."[12]

4. In his third enumeration of error, Morrison argues that his trial counsel was ineffective because he failed to offer evidence in support of his motion to dismiss. The state argued that this issue is waived because it was not raised below. However, since Morrison's appellate counsel became involved in the case after Morrison's attorney of record filed the notice of appeal, we conclude that this issue has been raised at the earliest practicable moment.[13] Ordinarily under these circumstances, we would remand the case to the trial court for a hearing and determination on the ineffectiveness claim.[14] However, "[i]n cases [such as the instant case,] where such remand would serve no useful purpose, the ineffectiveness issue may be decided on the record by this court."[15]

"In order to establish ineffective assistance, [Morrison] must show not only that his trial counsel's performance was deficient, but also that the deficiency so prejudiced his defense that, but for the trial counsel's performance, a reasonable probability exists that the result

---

[11] (Punctuation and footnote omitted.) *State v. Burrell*, 263 Ga. App. 207, 208 (2) (587 SE2d 298) (2003).

[12] (Citation omitted.) *Carl v. State*, 160 Ga. App. 464, 466 (287 SE2d 379) (1981) (search of defendant's wallet inside of her purse in accordance with police procedures was an inventory rather than an investigatory search and was permissible).

[13] *Russell v. State*, 267 Ga. 865, 868 (4) (485 SE2d 717) (1997). Accord *Threlkeld v. State*, 250 Ga. App. 44, 45 (1) (550 SE2d 454) (2001).

[14] *Russell*, supra.

[15] (Citation and punctuation omitted.) *Norman v. State*, 208 Ga. App. 830, 831 (3) (432 SE2d 216) (1993).

of the trial would have been different."[16] We held that the IAD was violated even though neither the detainer nor Morrison's response thereto was included in the record. Therefore, we cannot find that trial counsel was ineffective for failing to introduce the documents as there is no evidence that a different result would have ensued at trial.

5. In his last enumerated error, Morrison challenges the sufficiency of the evidence as to both of his convictions. Morrison argues essentially that there was no evidence offered to corroborate Officer Phillips's testimony that the methamphetamine was taken from the wallet or that Morrison crossed the centerline while driving. It is a well established rule that "[t]he testimony of a single witness is generally sufficient to establish a fact."[17] Furthermore, "[s]o long as there is some competent evidence to support each element of the offense(s) as charged, the jury's verdict will be upheld."[18] Accordingly, we find the evidence sufficient to support Morrison's convictions on both offenses.

## Case No. A04A1740

At approximately midnight on February 27, 2001, Officer Chris Carrier of the Lawrenceville Police Department responded to a domestic dispute with possible shots fired at 50 Curtis Road in Lawrenceville. After waiting for backup, Officer Carrier approached the duplex at that address, and its resident directed the officers to 44 Curtis Road, Morrison's residence. As Officer Carrier and Officer Dau approached Morrison's residence from different directions, Morrison exited a white Ford Probe that was parked in the driveway and walked toward the entrance of his residence. Officer Carrier identified himself as a police officer and directed Morrison to stop and put his hands on the car. Morrison ignored him and continued to walk toward Officer Carrier in a threatening manner, when Officer Dau approached Morrison from behind. After Morrison ignored Officer Dau's orders to stop, Officer Dau grabbed Morrison, and a struggle ensued. Morrison continued to fight with the officers as they tried to handcuff him. Eventually, Officer Dau was forced to spray Morrison with pepper spray so that the officers could place Morrison in the patrol car.

---

[16] (Punctuation and footnote omitted.) *Hester v. State*, 261 Ga. App. 614, 616 (3) (583 SE2d 274) (2003).

[17] OCGA § 24-4-8; *Walker v. State*, 251 Ga. App. 479, 482 (1) (553 SE2d 634) (2001). The exceptions to the rule are not applicable here.

[18] (Footnote omitted.) *Bacon v. State*, 249 Ga. App. 347, 348-349 (1) (548 SE2d 78) (2001).

During the struggle, Officer Dau had informed Officer Carrier that there was a black rifle laying across the driver's seat of Morrison's car. After securing Morrison, the officers surveyed the area around Morrison's car and found bullets from a rifle in the car and one spent shell on the ground. Officers Carrier and Dau examined the spent shell casing and determined from its odor that it had been recently fired.

Officer Dau testified that he collected the rifle, bullets, and shell casing and logged them in as evidence. Officer Dau also testified that 44 Curtis Road was a public city street, that he and Officer Carrier were in the lawful discharge of their duties when Morrison resisted arrest, and that there were no other persons at the scene when they encountered Morrison.

6. In his first enumeration of error, Morrison claims that his trial counsel was ineffective because he waived the argument raised in Morrison's motion to dismiss that the trial violated the IAD.[19] As we discussed above in Division 4, in order to prove ineffective assistance of counsel, "a defendant must show both that his trial counsel performed in a deficient manner and that the outcome of the trial would have been different but for counsel's deficiency."[20] Though we concluded above that the IAD was violated, no reversible error was committed because Morris suffered no harm. Therefore, had trial counsel raised the argument, it would not have changed the outcome of Morrison's trial. Accordingly, we cannot find that Morrison's trial counsel was ineffective.

7. In his second enumeration of error, Morrison argues that the trial court erred by sentencing him as a recidivist. We agree.

Officer Carrier testified that he checked Morrison's criminal history and discovered that he had been convicted of malicious injury to real property and malicious injury to personal property in South Carolina, both of which were felony offenses. The state introduced into evidence certified copies of Morrison's convictions to prove the offense of possession of a firearm by a convicted felon. The state also introduced certified copies of Morrison's federal conviction and the conviction involved in Case No. A04A1739.

In connection with Morrison's conviction for possession of a firearm by a convicted felon, he was sentenced to five years to serve as a recidivist pursuant to OCGA § 17-10-7 (c) to run concurrently

---

[19] By failing to invoke a ruling on Morrison's motion to dismiss, trial counsel waived that issue for purposes of appeal. *Wright v. State*, 259 Ga. App. 74, 77 (3) (576 SE2d 64) (2003); see *Lynott v. State*, 198 Ga. App. 688, 691 (7) (402 SE2d 747) (1991) (argument that trial court had no jurisdiction over appellant because of the state's failure to comply with the IAD was not raised at trial and thus was not preserved for appellate review).

[20] (Citation omitted.) *Minter v. State*, 245 Ga. App. 327, 331 (6) (537 SE2d 769) (2000).

with his sentence on the methamphetamine charge in Case No. A04A1739. Morrison argues that the sentence was erroneous because the state could not use the prior conviction to prove the possession charge and to sentence him as a repeat offender. Morrison is correct.

"Where the [s]tate proves a defendant's prior felony convictions for the purpose of convicting him of being a convicted felon in possession of a firearm, it may not also use those prior convictions in aggravation of punishment."[21] We find unpersuasive the state's argument that the rule only applies when the defendant is sentenced as a recidivist under OCGA § 17-10-7 (a).[22] In this case, the trial judge expressly stated that Morrison was being sentenced as a recidivist pursuant to OCGA § 17-10-7 (c). Pursuant thereto,

> any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Removing from consideration the South Carolina convictions, OCGA § 17-10-7 (c) does not apply because the state only introduced evidence of two other prior felony convictions. Consequently, we must reverse Morrison's sentence on Count 1 of Accusation No. 01-B-03650-8 and remand for resentencing on that count only.

8. In his last enumeration of error, Morrison challenges the sufficiency of the evidence as to each of his convictions.

(a) Morrison argues that there was no evidence that he was in possession of the firearm or that he was a convicted felon. We disagree.

OCGA § 16-11-131 (b) provides that any convicted felon "who receives, possesses, or transports any firearm commits a felony." There was evidence that Morrison was the only person in the car in

---

[21] (Citation omitted.) *Caver v. State*, 215 Ga. App. 711, 713 (4) (452 SE2d 515) (1994).

[22] See *King v. State*, 169 Ga. App. 444, 445 (313 SE2d 144) (1984) (prior conviction necessary for conviction under OCGA § 16-11-131 could not be used to punish defendant as a repeat offender under OCGA § 17-10-7 (a)); *Copeland v. State*, 269 Ga. App. 424, 425 (2) (604 SE2d 223) (2004) (*King* stands for the proposition that "the State may not use the same prior felony conviction required to convict a convicted felon for being in possession of a firearm to enhance the sentence for possession of a firearm by a convicted felon under the repeat offender statute *in the same prosecution*") (emphasis in original).

which the gun was found, that the gun had been fired recently, and that there were no other persons in the vicinity at the relevant time. The testimony of the officers was sufficient to establish these facts.[23] The fact that there was testimony that someone other than Morrison actually owned the gun is inapposite here.

Morrison argues that the guilty pleas he entered in 1996 in South Carolina were involuntary because his counsel was not present when he entered them. The state is required "to prove both the existence of the prior guilty pleas and that the defendant was represented by counsel in all felony cases."[24] It met its burden in this case. The evidence in the record showing that Morrison pled guilty and that he was represented by counsel was sufficient to authorize Morrison's conviction.[25]

Finally, Morrison contends that the certified copies lacked adequate authentication because they did not contain language indicating that they were certified under the "hand and seal" of a duly authorized official. The full faith and credit statute, OCGA § 24-7-24, provides, in relevant part, that "the records and judicial proceedings, or copies thereof, of any court . . . of any such state, territory, or possession may also be proved or admitted in any court . . . in this state when certified under the hand and seal, if any, of the judge, clerk, or other official of such court."[26] By use of the language "if any," the statute itself contemplates that every court may not certify documents under "hand and seal." Here, the convictions were stamped "TRUE COPY" and signed by the clerk of court of Pickens County, South Carolina. There is no evidence that the signature does not belong to the actual clerk of court or that the signature is not genuine.[27] Therefore, the admission of the prior convictions was proper.

(b) With respect to the convictions for discharge of a firearm near a public highway and obstruction of a law enforcement officer, we find the testimony of Officers Carrier and Dau sufficient to support these convictions.

*Judgment affirmed in Case No. A04A1739. Judgment affirmed in Case No. A04A1740, sentence vacated and case remanded for resentencing on Count 1. Blackburn, P. J., and Barnes, J., concur.*

---

[23] See OCGA § 24-4-8.

[24] (Citation omitted.) *Nash v. State*, 271 Ga. 281, 285 (519 SE2d 893) (1999).

[25] See *Ingram v. State*, 240 Ga. App. 172, 173 (2) (523 SE2d 31) (1999) (certified copy of sentence showing that defendant pled guilty and was represented by counsel was sufficient to support conviction).

[26] OCGA § 24-7-24 (b).

[27] See *Edmonds v. State*, 201 Ga. 108, 130 (6) (39 SE2d 24) (1946).

*Brown & Gill, Angela Y. Brown, Charles D. Joyner*, for appellant.
*Daniel J. Porter, District Attorney, Matthew D. Crosby, Assistant District Attorney*, for appellee.