S05G1136, S05G1147. MORRISON v. THE STATE (two cases).
(626 SE2d 500)

HUNSTEIN, Presiding Justice.

Joseph Morrison appealed from his convictions and sentences on various drug and firearm charges, challenging his convictions on the ground that the trial court was without jurisdiction to try him because he was being illegally detained under the Interstate Agreement on Detainers, OCGA § 42-6-20 et seq. (the "IAD"). We conclude that the trial court had jurisdiction over the criminal matters at issue and affirm the judgment of the Court of Appeals. See *Morrison v. State*, 272 Ga. App. 34 (611 SE2d 720) (2005).

The record demonstrates that appellant was serving a federal sentence in a Florida federal correctional institution in 2002 when, pursuant to Article IV of the IAD, the State of Georgia lodged a detainer against him for the crime of terroristic threats. Appellant sent a written request for final disposition of the terroristic threat charge, thereby triggering his speedy trial rights under the IAD, and was transferred to Georgia to be tried on that charge. See OCGA § 42-6-20, Art. III (a) (prisoner shall be tried within 180 days after

service upon prosecutor of request for final disposition of charges). The Georgia prosecutor decided not to pursue the terroristic threat charge, however, and it was dismissed with prejudice in May 2003 in accordance with Article V (a) of the IAD. Although the terroristic threat charge was dismissed, appellant remained in the custody of Georgia authorities and in June and July 2003, he was tried and convicted on the drug and firearm charges at issue in this appeal. The Court of Appeals affirmed his convictions and this Court granted appellant's petition for certiorari.

Appellant argues that his drug and firearm convictions must be reversed because the State violated Article V of OCGA § 42-6-20 by continuing to hold him after the dismissal of the terroristic threat charge and therefore, the trial court was without jurisdiction to convict and sentence him on charges not included in the detainer. Article V (d) of the IAD provides:

> The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

OCGA § 42-6-20. There is no question that the drug and firearm charges of which appellant was convicted were not listed in the detainer[1] and that they did not arise out of the same transaction as the terroristic threat charge. Thus, the sole issue in this appeal is whether the State's violation of Article V (d) in itself divested the trial court of jurisdiction over the prosecution of these unrelated charges.

Georgia has long recognized that the manner by which an accused is brought before a court has no bearing on the court's jurisdiction in a criminal proceeding. *Lackey v. State*, 246 Ga. 331 (2) (271 SE2d 478) (1980) (illegal arrest, without more, does not bar subsequent prosecution, nor is it defense to valid conviction); *Seabolt v. Hopper*, 240 Ga. 171 (240 SE2d 57) (1977) (defect or irregularity in arrest or imprisonment does not affect court's jurisdiction); *Tommie v. State*, 158 Ga. App. 216 (5) (279 SE2d 510) (1981) (illegal arrest or detention does not void subsequent conviction where defendant returned to Georgia under warrant alleging offense other than one he was subsequently convicted of). See also *Gerstein v. Pugh*,

---

[1] Although the detainer is not included in the record, the State does not dispute the Court of Appeals' determination that the terroristic threat charge was the only charge forming the basis of the detainer.

420 U. S. 103, 119 (II) (B) (95 SC 854, 43 LE2d 54) (1975) (illegal arrest or detention does not void subsequent conviction); *Frisbie v. Collins,* 342 U. S. 519, 522 (72 SC 509, 96 LE 541) (1952). This Court has not previously been called upon to determine the effect of a violation of Article V (d) on the jurisdiction of our courts. However, numerous other courts have considered this issue and under virtually identical facts have refused to dismiss charges or reverse convictions. See *Michigan v. Marshall,* 428 NW2d 39, 43 (Mich. App. 1988); *Ramirez v. Indiana,* 455 NE2d 609, 613-614 (Ind. App. 1983); *Saunders v. Delaware,* 397 A2d 548 (Del. 1979); *Michigan v. Browning,* 310 NW2d 365, 372 (11) (Mich. App. 1981); *Brown v. District Court,* 571 P2d 1091 (Colo. 1977); *Iowa v. Lawless,* 265 NW2d 733 (I) (Iowa 1978). See also *Connecticut v. Clemons,* 1997 Conn. Super. LEXIS 2506 (unreported); *Wisconsin v. Duquette,* 516 NW2d 19 (183 Wis.2d 428) (Wis. App. 1994) (unpublished). Accord *Iowa v. Casuso,* 253 NW2d 919, 920-921 (I) (Iowa 1977) (prosecution of defendant by receiving State for crime committed while held in receiving State did not deprive receiving State of jurisdiction to prosecute); *Cooney v. Fulcomer,* 886 F2d 41, 44-45 (III) (3rd Cir. 1989) (defendant brought to receiving State based on detainer not entitled to habeas corpus relief when prosecuted on unrelated charges not the subject of the detainer). In each of these cases, the courts ruled that the State's violation of Article V (d) had no effect on the *jurisdiction* of the trial court.

Our review of Georgia's detainer statute leads us to similarly conclude that the State's violation of Article V (d) did not divest the trial court of jurisdiction over appellant in these criminal matters. By its plain language the IAD provides no sanction for the violation of Article V (d). The IAD does dictate that in the event that the receiving State fails to try a prisoner within the statutory time limits or if the prisoner is returned to the sending State without having been tried, any untried charges must be dismissed with prejudice. OCGA § 42-6-20, Art. III (d) and Art. IV (e). Thus, Articles III and IV of the IAD each expressly provide remedies in the event of a violation. In contrast, the IAD contains no remedy for the State's failure to comply with Article V and we refuse to sua sponte create such a remedy.

In the absence of express language to the contrary, we therefore reject appellant's invitation to interpret Article V in such a manner as to convert it into a substantive provision conferring or divesting Georgia courts of subject matter or personal jurisdiction. The IAD is a statutory set of procedural rules enacted to provide the prisoner with a method of clearing detainers lodged against him and to provide cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges. The sanction of dismissal with prejudice, as provided by the drafters of the IAD and adopted by the Georgia legislature, goes "not to the authority or jurisdiction of

the [trial] court but to the power of the [State] to proceed" in the prosecution and "is a relatively severe sanction designed to compel prosecutorial compliance with the procedures set forth in the IAD. It is, however, a sanction without effect on the jurisdiction of the [trial] court." *Camp v. United States*, 587 F2d 397, 399, n. 4 (8th Cir. 1978). See also *Remeta v. Singletary*, 85 F3d 513, 518 (11th Cir. 1996) (finding no "jurisdictional element" in the IAD); *Brown v. District Court*, supra, 571 P2d at 1093 (IAD not "intended to stand as a barrier to a court's obtaining personal jurisdiction over criminal defendants"). The IAD neither grants nor divests a trial court of jurisdiction and, concomitantly, trial courts in this State do not depend upon the IAD for personal or subject matter jurisdiction, as both are independently provided by other statutes.

To hold otherwise would have the unjustified and unwarranted effect of granting greater protection to a defendant over whom the State obtains custody pursuant to the IAD than to prisoners brought to Georgia by other methods. It is well settled in Georgia that a trial court has jurisdiction to oversee the criminal prosecution of even those defendants who were forcibly removed from another state and brought into a Georgia court, who were illegally arrested or detained without a showing of probable cause, and who were unlawfully or irregularly extradited by the State. See, e.g., *Frisbie*, supra, 342 U. S. at 522; *Lackey*, supra, 246 Ga. at 333 (2) (illegal arrest); *Seabolt*, supra, 240 Ga. at 172-173 (illegal warrant); *Lascelles v. State*, 90 Ga. 347 (1) (165 SE 945) (1892), aff'd, *Lascelles v. Georgia*, 148 U. S. 537, 545 (13 SC 687, 37 LE 549) (1893) (unlawful extradition). As stated by the United States Supreme Court in *Lascelles*, supra, 148 U. S. at 545, a case in which the defendant argued that the trial court was without jurisdiction to try him for crimes other than those enumerated in extradition papers:

> [i]f a fugitive may be kidnapped or unlawfully abducted from the State or country of refuge, and be, thereafter, tried in the State to which he is forcibly carried, without violating any right or immunity secured to him by the Constitution and laws of the United States, it is difficult to understand upon what sound principle can be rested the denial of a State's authority or jurisdiction to try him for another or different offence than that for which he was surrendered. If the fugitive be regarded as not lawfully within the limits of the State in respect to any other crime than the one on which his surrender was effected, still that fact does not defeat the jurisdiction of its courts to try him for other offences, any more than if he had been brought within such jurisdiction forcibly and without any legal process whatever.

Accordingly, while the better practice in this case may have been for the State to follow a different course of action, e.g., to include all charges for which appellant was prosecuted within the detainer, return appellant to federal custody and file another detainer, or initiate other proceedings by which it could obtain custody of appellant, the State's actions did not divest the trial court of jurisdiction over the criminal charges filed against appellant.

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Benham, J., who dissent.*

SEARS, Chief Justice, dissenting.

Under the plain language of the Interstate Agreement on Detainers, "in the event that an action on the indictment . . . is not brought to trial within the period provided [herein], the appropriate court . . . shall enter an order dismissing the same with prejudice."[2] It is undisputed that the State failed to bring the charges at issue in this case to trial within the 180 days provided by the IAD.[3]

It is also undisputed that the State directly violated the plain language of the IAD's restriction that the receiving state's temporary custody "shall be only for the purpose of permitting prosecution on the charge or charges . . . which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction."[4]

Under today's majority ruling, however, the State's two wrongs do make a right. The State is now free to ignore completely the IAD's time restrictions and other requirements for pending charges against a defendant that it chooses to omit from its detainer. Though that may be a direct violation of the IAD's plain language, it is a violation that carries no consequence. The State would be ill-advised to actually comply with these provisions, because doing so would render it unable to flout the IAD's time limits and other restrictions.

Perhaps the majority's deference to the State's disregard of the IAD's plain requirements would seem less troublesome if this Court consistently treated those requirements as mere formalities. But when the shoe is on the other foot, and the defendant fails to strictly adhere to the IAD's formal requirements, this Court properly denies that defendant the benefits provided by the IAD.[5] Thus, when a

---

[2] OCGA § 42-6-20 (Art. V (c)).

[3] Id. at Art. III (a).

[4] Id. at Art. V (d). See also id. at Art. V (g) ("[f]or all purposes other than that for which temporary custody as provided in this agreement is exercised, the prisoner shall be deemed to remain in the custody of and subject to the jurisdiction of the sending state.").

[5] *Clater v. State*, 266 Ga. 511, 512-513 (467 SE2d 537) (1996).

defendant initiates IAD proceedings by facsimile rather than certified mail, he is not entitled to enforce the IAD's time restrictions against the State.[6]

I cannot deny that the majority rests in good company in today's ruling. The majority of courts across the country have chosen to excuse the states from any consequence for violating the IAD's custodial restrictions. But the majority today misses a good opportunity to showcase its commitment to fairness by giving meaning to the restrictions that the IAD deliberately places upon the State. Instead, the majority chooses the safety of the larger pack and acquiesces in the interpretation of the IAD as a single-edged sword that the State can disregard as it sees fit. Accordingly, I cannot join today's ruling.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED FEBRUARY 13, 2006.

*Brown & Gill, Angela B. Dillon*, for appellant.
*Daniel J. Porter, District Attorney, Matthew D. Crosby, Assistant District Attorney*, for appellee.